UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br>Plaintiff,<br><br>v.<br><br>HANOVER R.S. LIMITED PARTNERSHIP,<br>Defendant. | Case No. 1:24-cv-10396 |

**CONSENT DECREE**

WHEREAS, Hanover R.S. Limited Partnership ("Hanover") is developing, on an almost ten-acre parcel of land at 1325 Washington Street in Weymouth, Massachusetts, a multifamily residential development (the "Site"), which development is currently under construction, with Hanover R.S. Construction LLC ("Hanover Construction") (Hanover's wholly owned subsidiary) being the general contractor for such construction;

WHEREAS, the current owner of the Site is USHAN Weymouth Property Owner LLC ("Owner");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint (filed today against Defendant in the United States District Court, District of Massachusetts) that Defendant has violated the Federal Clean Water Act, 33 U.S.C. § 1331(a), *et seq*. (the "Federal Clean Water Act") by discharging stormwater from the Site into wetlands with a continuous surface water connection to the Plymouth River ("Plymouth River Wetlands") directly and via

catch basins on Washington Street without complying with a federal construction general stormwater permit issued by the United States Environmental Protection Agency ("EPA");

WHEREAS, on August 15, 2023, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit against Defendant ("Notice Letter") to the Administrator of the EPA; the Administrator of EPA Region 1; the Massachusetts Department of Environmental Protection; and to Defendant, pursuant to Section 505 of the Federal Clean Water Act;

WHEREAS, Hanover alleges that it submitted an application for a federal construction general stormwater permit on August 10, 2022, and due to an error of some sort (scrivener's or otherwise), the certification notice was never formally sent forth through EPA's website to Hanover for its certification;

WHEREAS, after receiving the Notice Letter, Hanover and Hanover R.S. Construction took several actions, including (1) successfully obtaining permit coverage for stormwater discharges under EPA's National Pollutant Discharge Elimination System Permit No. MAR1004SC (the "Stormwater Permit") for the Site, (2) reviewing stormwater discharge conditions to identify additional measures to reduce stormwater pollutant discharge to the Plymouth River Wetlands, (3) undertaking additional measures (as described in Exhibit A) to reduce pollutants in its stormwater discharges to the Plymouth River Wetlands; and (4) revising the Stormwater Pollution Prevention Plan ("SWPPP") to incorporate these additional measures;

WHEREAS, Defendant denies the allegations raised by the Commonwealth in the Notice Letter and the Complaint and believes that it has valid defenses to those allegations;

WHEREAS, the Commonwealth and Defendant (jointly, the "Parties") have agreed to enter into this Consent Decree because they believe that it is in the Parties' interests and the

public interest to proceed promptly with the actions called for in this Decree rather than to expend additional time and resources litigating the matters set forth herein;

WHEREAS, neither this Consent Decree, nor the terms hereof, nor the performance of the terms hereunder by Defendant shall constitute or be construed as an admission or acknowledgment by Defendant (or by any other person or entity) of the Commonwealth's factual or legal assertions in the Notice Letter or the Complaint, and Defendant (and each such person and entity) retains the right to controvert, in any subsequent proceeding, the validity of the facts or determinations underlying this Consent Decree;

WHEREAS, Defendant does not contest Plaintiff's factual or legal assertions in the Notice or the Complaint solely for purposes of the issuance or enforcement of this Consent Decree;

WHEREAS, the Parties have reached an agreement to resolve the litigation; and

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c) and 42 U.S.C. § 7604(c).

NOW THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issues of fact or law, it is ADJUDGED, ORDERED, AND DECREED, as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the Parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1).

2. The Complaint alleges facts that, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

## II. EFFECTIVE DATE

3. The Effective Date of this Consent Decree shall be the date on which the Court signs the Consent Decree and enters it on the docket ("Effective Date").

## III. PARTIES BOUND

4. This Consent Decree shall constitute a binding agreement between the Parties, and Defendant consents to its entry as a final judgment by the Court and waives all rights of appeal upon the Court's signing and entering this Consent Decree on the docket. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of either Party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the Parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and Defendant agree otherwise in writing within fourteen (14) days of the Court's decision.

5. The provisions of this Consent Decree shall apply to and bind Defendant and any other persons bound by the order pursuant to Fed. R. Civ. P. 65(d)(2).

6. Defendant shall provide a true copy of this Consent Decree to Hanover Construction, the Owner, and to all of Defendant's managers, directors, officers, supervisors, contractors, employees, and agents whose duties might include compliance with any provision of this Consent Decree.

7. For all contracts entered into after the Effective Date that may impact Defendant's compliance with the Consent Decree, Defendant shall condition the contract on the contractor's

performance of the work in compliance with the terms of this Consent Decree. Defendant shall ensure that all work performed by its contractors complies with the terms of this Consent Decree.

8. For all contracts entered into by Hanover Construction and/or the Owner after the Effective Date that may impact Defendant's compliance with the Consent Decree, Defendant shall ensure that Hanover Construction and/or the Owner condition the contract on the contractor's performance of the work in compliance with the terms of this Consent Decree. Defendant shall ensure that all work performed pursuant to contracts between Hanover Construction or the Owner and third parties complies with the terms of this Consent Decree.

9. For two (2) years following the Effective Date, or until Defendant has terminated the Stormwater Permit in accordance with Section 8 of the Stormwater Permit, whichever date is earlier (this term is hereinafter referred to as the "Monitoring Period"), Defendant shall provide written notice of any prospective change or transfer in ownership of the Site, together with a copy of the proposed written change or transfer agreement, to the Attorney General in accordance with Section X (Notices) of this Consent Decree. At least thirty (30) days prior to any change or transfer of ownership, management, or operation of the Site that occurs within the Monitoring Period, Defendant shall provide a copy of this Consent Decree to the proposed transferee or new manager or operator. No change or transfer in ownership, management, or operation of the Site shall relieve Defendant of its obligations under this Consent Decree.

## IV. PAYMENTS

10. Within fifteen (15) days of the Effective Date, Defendant shall pay to the Weir River Watershed Association the sum of sixty-four thousand dollars ($64,000) to fund a project or projects that increase enjoyment of, access to, and water quality in the Plymouth River watershed. Evidence of Defendant's payment to the Weir River Watershed Association shall be contemporaneously provided by Defendant to the Commonwealth pursuant to Section X

(Notices). Payments should be made by wire transfer referencing this action to the following accounts:

Weir River Watershed Association Inc
ABA#: [redacted]
ACCOUNT#: [redacted]
[redacted]
TIN: [redacted]

11. Within fifteen (15) days of the Effective Date, Defendant shall reimburse the Attorney General's Office in the amount of twenty thousand dollars ($20,000) to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payments should be made by wire transfer referencing this action to the following account:

Commonwealth of Massachusetts, Office of Attorney General
ABA#: [redacted]
ACCOUNT#: [redacted]
[redacted]
TIN: [redacted]

and shall include the following in the payment information: "EPD, *Commonwealth v. Hanover R.S. Limited Partnership - Costs.*" Any payments received by the Commonwealth after 4:00 P.M. (Eastern Time) will be credited on the next business day. At the time of payment, Defendant shall send notice, by electronic mail, that such payment has been made to the Commonwealth to Helen Yurchenco, Environmental Protection Division at helen.yurchenco@mass.gov and shall include all of the payment information stated in this Paragraph in addition to the amount of the payment.

## V. INJUNCTIVE RELIEF

**Stormwater Discharges**

12. Defendant will ensure that the Site is operated in compliance with the Stormwater Permit, including any amendments thereto, and with the Federal Clean Water Act, until the Stormwater Permit has been terminated in compliance with Section 8 of the Stormwater Permit.

13. Consistent with the Stormwater Permit, Defendant will inspect and properly maintain all stormwater controls to ensure its compliance with the Stormwater Permit until the Stormwater Permit has been terminated in compliance with Section 8 of the Stormwater Permit.

## VI. SITE ACCESS AND SUBMISSION OF RECORDS

14. Hanover shall permit the Attorney General's Office to visit the Site during normal business hours during the Monitoring Period, provided that the Attorney General's Office provide at least two (2) business days' prior notice. During any such visit, the Attorney General's Office shall have access to and permission to copy any documentation required to be kept on site by the Stormwater Permit.

15. During the Monitoring Period, Defendant shall provide the Attorney General's Office with electronic links to the following documents:

a. copies of all documents Defendant submits from the Effective Date onward to EPA, the Commonwealth, and/or the City of Weymouth concerning Defendant's stormwater controls or the quality of Defendant's stormwater discharges associated with construction activity at the Site, including but not limited to all documents and reports submitted to EPA, the Commonwealth, and/or the City of Weymouth from the Effective Date onward as required by the Stormwater Permit. Such documents and reports shall be uploaded to a ShareFile site accessible to the Attorney General's Office within two (2) business days after they are submitted to the governmental entity;

b. current copies of the SWPPP for the Site within ten (10) business days of receipt by Defendant of a request by the Attorney General's Office;

c. all maintenance records for the Site's construction stormwater pollution control systems from the Effective Date onward within ten (10) business days of receipt by Defendant of a written request by the Attorney General's Office;

d. written notice of any changes made to stormwater control measures at the Site, if any, from the Effective Date onward pursuant to Section 5 of the Stormwater Permit within two (2) weeks of completion; and

e. laboratory reports and analytical results of stormwater sampling performed by or for Defendant from the Effective Date onward for stormwater discharges from the Site, if any, within ten (10) business days of receiving the reports.

16. Any information provided by Defendant may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

17. The Consent Decree in no way limits or affects any right of entry and inspection or any right to obtain information held by the Commonwealth or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VII. INTEREST AND COLLECTIONS

18. If any payment required pursuant to this Consent Decree is late or not made, Defendant shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) per annum computed monthly and shall pay all expenses associated

with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorney fees.

## VIII. EFFECT OF CONSENT DECREE

19. Upon compliance by Defendant with the requirements of this Consent Decree, (a) this Consent Decree shall resolve Defendant's liability and the liability of all persons bound by this Consent Decree pursuant to Fed. R. Civ. P. 65(d)(2) for the specific legal claims alleged against it in the Notice Letter and the Complaint; and (b) the Commonwealth shall release Defendant and all persons bound by this Consent Decree pursuant to Fed. R. Civ. P. 65(d)(2) from liability for the specific legal claims alleged against it in the Notice Letter and the Complaint. For the avoidance of doubt, the foregoing clauses (a) and (b) shall include, and shall be deemed to further resolve liability of, and release from liability, as the case may be, Owner and Hanover Construction to the extent the specific legal claims alleged against Defendant in the Notice Letter or the Complaint could have also been alleged against Owner or against Hanover Construction and provided that Defendant has complied with Paragraph 6 of this Consent Decree. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of all the statutes and regulations referred to in this Consent Decree, whether related to the specific legal claims resolved by the Consent Decree or otherwise.

20. Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically alleged in the Notice Letter or pleaded in the Complaint or for any violations not revealed to the Commonwealth or for violations that occur after the Effective Date; (b) shall be deemed to excuse non-compliance by Defendant or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree

or any permit or other approval issued by the Massachusetts Department of Environmental Protection or EPA relative to the Site.

21. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall not be a defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney General's Office does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of any federal, state, or local law, regulation, or permit.

22. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Decree.

**IX. MISCELLANEOUS**

23. Defendant understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the costs or sums that Defendant has agreed to pay under this Consent Decree are not subject to discharge in any bankruptcy.

24. Defendant shall pay all expenses, including reasonable attorney fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree against it, consistent with the scope of 33 U.S.C. § 1365(d).

25. Nothing in this Consent Decree shall prevent Defendant from taking any action otherwise required by law.

26. The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the Parties.

27. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business on the next business day.

28. This Consent Decree may be signed in counterparts. Signature of the Parties transmitted by scanning and email are binding and shall be deemed to be originals for all purposes.

29. In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

## X. NOTICES

30. Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by email to the following addresses:

For the Attorney General's Office and the Commonwealth:

Helen D. Yurchenco, Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
helen.yurchenco@mass.gov

With copies to:

Muhammad Yaya Diallo, Federal Case Coordinator
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
muhammad.diallo@mass.gov

For Defendant Hanover R.S. Limited Partnership:

John Nash, President
The Hanover Company
1780 S. Post Oak Lane
Houston, TX 77056
jnash@hanoverco.com

With copies to:

Matthew J. Connolly, Esq.
Nutter, McClennen & Fish, LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
mconnolly@nutter.com

and

Timothy Ellwood, General Counsel
The Hanover Company
1780 S. Post Oak Lane
Houston, TX 77056
tellwood@hanoverco.com

or, to such other place or to the attention of such other individual as a party may from time to time designate by written notice to the other Parties to this Consent Decree.

## XI. INTEGRATION

31. Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the Parties and represents the complete and exclusive statement of the Parties with respect to the terms of the settled agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between the Parties shall have no force and effect.

## XII. MODIFICATION

32. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the Parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the Parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph. Minor modifications of the preliminary plans attached hereto by the Defendant shall not constitute a material change for purposes of this Paragraph. Three months after the Commonwealth receives Notice that

Defendant has terminated the Stormwater Permit in accordance with Section 8 of the Stormwater Permit, and provided there are no pending enforcement actions related to this Consent Decree or any other outstanding reasonable dispute brought in good faith by the Commonwealth over Defendant's compliance with this Consent Decree, the Defendant's obligations under this Consent Decree shall terminate.

## XIII. AUTHORITY OF SIGNATORY

33. The person signing this Consent Decree on behalf of Defendant acknowledges that: (a) he or she has personally read and understood each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) he or she is authorized to sign and bind Defendant to the terms of this Consent Decree, and (c) that, to the extent necessary, the managers, directors, officers, and shareholders of Defendant have consented to the entry of this Consent Decree as a Final Judgment.

## XIV. RETENTION OF JURISDICTION

34. The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree subject to the limitations in Section XII (Modifications).

## XV. FINAL JUDGMENT

35. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.

OFFICE OF THE ATTORNEY GENERAL
ANDREA JOY CAMPBELL, ATTORNEY GENERAL

By: [signature] Dated: 2/20/2024

Helen Yurchenco
Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
617-963-2507
helen.yurchenco@mass.gov

HANOVER R.S. LIMITED PARTNERSHIP
By: THC Capital G.P. LLC, its general partner

By: John H Nash Dated: 2/13/24

John Nash, President
The Hanover Company
1780 S. Post Oak Lane
Houston, TX 77056
jnash@hanoverco.com

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

/s/ Leo T. Sorokin

United States District Court

Dated: 5/3/2024

## EXHIBIT A

- Installation of stone catchment/infiltration trenches along main drive lane in site, upstream of construction entrance on 50-100 foot intervals.

- Replace existing stone tracking pad at connection to Washington Street with new 50'L x 24'W paved Construction Entrance. Paved entrance to be surrounded with bituminous curbing to define the pavement edge and divert any site related runoff generated in the stone construction entrance to the new crushed stone settling basin. Utilize Cape Cod Berm as needed along front of driveway along R-O-W Line and at rear of paved entrance to maintain ability for vehicles to drive over the curb to enter/exit the site. Utilize vertical bituminous curb where possible to provide taller vertical separation / barrier condition along the sides.

- Install new 24' wide x 50' long stone tracking pad, behind the newly installed paved construction entrance. Stone shall be 1.5" (min.) washed crushed stone or larger. Note 2" preferred if available.

- Remove stored materials in northwestern corner of site and construct a new stone rip rap settling basin to capture any runoff from the new stone construction entrance. Extend Crushed Stone trench from stone tracking pad to connect to rip rap settling basin area.

- Install temporary paved apron between existing paved roadway edge and construction fence in place of the existing stone apron. Install temporary vertical concrete curb along back edge of paved apron.

- Install two (2) rows of 12" silt sock on project side of the construction fencing facing Washington Street.

- Extend a temporary bituminous curb along the project side of Washington Street, extending from the south side of the exposed ledge outcrop near the Skinner Landscape property, heading northward toward the project site, where the curb will transition to a vertical bituminous curb along the interface between the project's construction fence and the new paved apron identified above. Curbing shall extend into the site and around the new paved construction entrance.

- Stone Construction Entrance to shift northward temporarily in October for 2-4 weeks to accommodate construction sequencing needed to install the new 3-sided box culvert system. Then construction entrance expected to move back to location shown on the plan with the separate paved and stone segments.